| | | |
|---|---|---|
| Sprint Nextel Corporation and Sprint Communications Company, L.P., | ) ) ) | |
| | ) | No. 12 C 9095 |
| Plaintiffs, | ) ) | |
| | ) | Judge Thomas M. Durkin |
| v. | ) ) | |
| AU Electronics, Inc. d/b/a A-U Electronics, Inc., an Illinois corporation; Global Mobile Trading, Inc. d/b/a AU Express Cash 4 Electronics d/b/a A-U Express d/b/a AU, Inc., an Illinois corporation; Umair Yasin, individually; and Adnan Vadria, individually, | ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Sprint Nextel Corporation and Sprint Communications Company, L.P. (collectively, "Sprint") bring this action against defendants AU Electronics, Inc. ("AU"), Global Mobile Trading, Inc. ("GMT"), Umair Yasin ("Yasin"), and Adnan Vadria ("Vadria"), alleging that defendants are engaged in a pattern of unlawful business practices involving the bulk purchase and resale of Sprint cellular phones.[1] On August 20, 2013, the parties signed a settlement agreement which provides for a complete resolution of the lawsuit. R. 134. Defendants later notified the Court that they were repudiating the agreement, R. 132, which prompted a dispute between the parties over whether the agreement was enforceable. Presently before the Court

---

[1] T-Mobile USA, Inc. sued the same defendants in *T-Mobile USA, Inc. v. AU Elecs., Inc., et al.*, No. 12 C 10046, which is also before this Court. The parties are represented by the same attorneys in both cases.

1

is Sprint's motion to enforce the settlement agreement. R. 141. For the reasons explained below, Sprint's motion is granted.

## Background

On November 13, 2012, Sprint filed a fifteen-count complaint alleging that defendants were "willfully infring[ing] Sprint's rights related to its specially-manufactured wireless telephones" through an elaborate "Bulk Handset Trafficking Scheme." R. 1 ¶ 1. According to the complaint, defendants instigated the scheme by acquiring large quantities of phones from Sprint and its authorized retailers. *Id.* ¶ 3. Defendants then removed the phones from their original packaging and shipped them overseas, unlocked or to be unlocked, to be sold for a substantial profit. *Id.* As a result of this alleged scheme, Sprint brought numerous claims under federal and state law, including violations of the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030. R. 1 ¶¶ 119, 160.

Due to the continuing nature of the alleged conduct, the Court ordered defendants to preserve all evidence related to the lawsuit. R. 51. While discovery was ongoing, defendants filed two motions to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). R. 17; R. 60. Then, during the week of August 12, 2013, counsel for Sprint took depositions of Vadria and Yasin at the offices of defendants' counsel. R. 141 at 3. At that point, the parties began discussing the possibility of settlement.[2] *Id.* at 3-4. Settlement discussions continued throughout

---

[2] Defendants contend that counsel for Sprint ambushed them with direct communications made outside the presence of their counsel. R. 132 ¶ 3. Sprint denies these allegations and instead claims that the parties discussed settlement

the week, and on August 16, 2013, the parties reached an agreement. *Id*. The settlement agreement was memorialized in writing, and the parties exchanged notarized signature pages on August 20, 2013. *Id*. at 4-5.

The settlement agreement provides for a complete resolution of the lawsuit and includes provisions that are highly favorable to all parties. Section 9(A) of the agreement provides for entry of Final Judgment against defendants in the amount of $[redacted]. R. 134 at 5. Sprint is barred from executing on the Final Judgment, however, if defendants pay four installments of $[redacted], with each installment separated by several months:

> Defendants stipulate and agree that the amount of the Final Judgment entered in this Lawsuit in favor of Sprint and against Defendant AU Electronics, Inc. d/b/a A-U Electronics, Inc., shall be $[redacted] in the form attached hereto as Exhibit A to Exhibit 1. Sprint agrees not to execute on the Final Judgment provided Defendants (a) fully and timely comply with all of their obligations under this Agreement and the Permanent Injunction; and (b) fully and timely make payment in the amount of $[redacted] to Sprint . . . in four equal installments of $[redacted] each, paid no later than January 31, 2014, May 1, 2014, August 1, 2014, and December 29, 2014, respectively.

*Id*. at 5-6. In exchange, defendants are required to cease "any conduct consisting of or related to . . . the Bulk Handset Trafficking Scheme [including] but not limited to purchasing, selling, unlocking, reflashing, altering, advertising, soliciting and/or

---

with counsel present during breaks in the testimony. R. 141 at 3-4. Despite the conflicting versions of how the settlement process was initiated, there apparently is no question that the substantive discussions that followed were all with counsel present, and there is no claim by defendants that the settlement agreement should not be enforced because of the manner in which the settlement discussions began.

shipping, directly or indirectly, any Sprint Phones." *Id.* at 3. Defendants are also prohibited from using third parties to engage in such conduct. *Id.* at 3-4.

At the center of this dispute is a provision that prohibits the parties from disclosing Sprint's forbearance in executing on the Final Judgment. Under Section 9(C) of the agreement:

> Any forbearance by Sprint in executing on the Final Judgment shall remain STRICTLY CONFIDENTIAL and both Sprint and Defendants are strictly prohibited from disclosing such forbearance or filing with the Court any document reflecting such forbearance under all circumstances except in connection with an action to enforce the terms of this Agreement. In that event, Defendant may file a copy of this Agreement with the Court under seal, pursuant to the applicable Rules of Civil Procedure and the Local Rules of the Court. The forbearance in execution of the Final Judgment under this Settlement Agreement is not a forgiveness of a debt.

*Id.* The agreement also contains a provision that delayed filing of the stipulation for entry of Final Judgment and Permanent Injunction for 60 days, until October 21, 2013. R. 124 at 2. The purpose of this provision was to give defendants time to pursue claims against their insurers. *See id.* at 2 n.1. Specifically, Section 10 of the agreement provides that:

> No earlier than sixty (60) days from the full execution of this Agreement, Sprint will file a Stipulation for the entry of a Final Judgment and Permanent Injunction against Defendants in the Lawsuit in substantially the form attached hereto as Exhibit 1.

R. 134 at 6. As a result of these two provisions, the parties did not immediately inform the Court that they had executed a settlement agreement on August 20,

2013. To the Court's knowledge, defendants' motions to dismiss were still pending on that date and for some time thereafter.

On September 11, 2013, federal and state law enforcement agents executed search warrants at AU's offices for alleged violations of 18 U.S.C. §§ 1956(a)(2)(A) and (h) (money laundering), 2314 (transportation of stolen goods), and 2315 (sale or receipt of stolen goods). R. 141 at 5. During this raid, the agents seized all of defendants' inventory and records and placed a $9,999,999.00 lien against AU's bank account. *Id.*

On September 16, 2013, defendants filed a motion to advance a hearing or decision on the pending motions to dismiss, or in the alternative, for a summary judgment conference. R. 129. In their motion, defendants advised the Court of the September 11, 2013 raid on AU's offices and accused Sprint of instigating it. *Id.* ¶¶ 1-2. Defendants then demanded a ruling on the pending motions to dismiss, noting that the Court had provided "no explanation for why [it] ha[d] chosen to delay in ruling." *Id.* ¶¶ 6, 15. In the alternative, defendants requested an in-chambers hearing to discuss a potential motion for summary judgment. *Id.* ¶ 16. Defendants, however, made no mention of the fact that the parties had already signed a settlement agreement which had, at least on its face, completely resolved the lawsuit nearly four weeks earlier.

Defendants' September 16, 2013 motion to advance a hearing or decision prompted two filings later that day. First, Sprint filed a notice of settlement which, for the first time, informed the Court that "all parties to this case have reached a

comprehensive settlement." R. 131 at 1. Sprint noted that the agreement contained a 60-day delay for filing the stipulation for entry of Final Judgment and Permanent Injunction but explained that it could not "wait any longer to inform the Court of the parties' settlement," given defendants' filing earlier that day that "request[ed] the Court to needlessly expend judicial resources on a case that has been settled in all respects." *Id.* at 2. Shortly thereafter, defendants informed the Court that they were repudiating the settlement agreement due to allegations that Sprint had caused or contributed to the governmental raid on AU's offices and Sprint's disclosure of "strictly confidential" terms of the settlement agreement by filing its notice of settlement. R. 132 ¶¶ 4, 7. In response, the Court held a telephonic status hearing on September 17, 2013. R. 136. The Court heard arguments from all parties and then instructed Sprint to submit a brief explaining why the settlement agreement should be enforced. *Id.* An accompanying briefing schedule on the issue was set. *Id.*

On September 19, 2013, defendants filed a motion for expedited discovery, asking the Court to compel Sprint to produce "any and all communications with government authorities regarding [d]efendants." R. 138 at 1. This request was based defendants' allegation that Sprint had affirmatively represented during settlement negotiations that it "had [not] previously communicated or shared information with the government[,] and to [its] knowledge, there was no active investigation of [d]efendants." *Id.* ¶ 9. Defendants asserted that they would be

entitled to rescission and repudiation of the settlement agreement if it was shown that Sprint had committed fraud in making these statements. *Id.* ¶ 13.

The Court granted defendants' motion in part and ordered Sprint to provide affidavits from individuals who had contact with law enforcement personnel between August 16, 2013 and September 18, 2013. R. 144. The Court did not require disclosure of communications predating the settlement agreement, however, due in part to an integration clause which provides that "[t]his Agreement expresses the entire agreement between the [p]arties with respect to the compromise of the claims described herein." R. 134 at 11.

In response to the discovery order, Sprint produced affidavits from its Group Manager of Corporate Security Investigations, Richard E. Stephenson, and its attorney in this case, James Baldinger. R. 145; R. 146. Both affidavits maintained that, during the relevant dates, Sprint's employees and agents had not "provided any information to law enforcement regarding the Defendants in this case, except in response to a request by a member of law enforcement." R. 145 ¶ 5; R 146 ¶ 4. Sprint notes that such communications are expressly permitted by Section 17 of the settlement agreement, which provides that:

> Sprint shall not disclose Defendants' information beyond what is reasonably necessary to investigate and pursue claims of participation in the Bulk Handset Trafficking Scheme or upon request by a member of law enforcement.

R. 134 at 10. Sprint's motion to enforce the settlement agreement was fully briefed as of October 18, 2013. R. 141.[3]

## Legal Standard

"A district court has the inherent or equitable power to enforce a settlement agreement in a case before it." *Hyde Park Union Church v. Curry*, 942 F. Supp. 360, 363 (N.D. Ill. 1996) (citing *Wilson v. Wilson*, 46 F.3d 660, 664 (7th Cir. 1995)). It is well-established that a settlement agreement is a contract, *Herrnreiter v. Chicago Hous. Auth.*, 281 F.3d 634, 636 (7th Cir. 2002), and therefore federal courts look to state contract law to decide issues regarding the formation, construction, and enforcement of the agreement, *Magallanes v. Ill. Bell Tel. Co.*, 535 F.3d 582, 584 (7th Cir. 2008). In interpreting a settlement agreement under Illinois law, "'the paramount objective is to give effect to the intent of the parties as expressed by the terms of the agreement.'" *Laserage Tech. Corp. v. Laserage Labs., Inc.*, 972 F.2d 799, 802 (7th Cir. 1992) (quoting *Int'l Minerals & Chem. Corp. v. Liberty Mut. Ins. Co.*, 168 Ill. App. 3d 361, 370 (1st Dist. 1988)). Illinois follows the objective theory of intent, meaning that the terms of the agreement depend on "what the parties express to each other and to the world, not on what they keep to themselves." *Skycom Corp. v. Telstar Corp.*, 813 F.2d 810, 814-15 (7th Cir. 1992).

---

[3] Defendants' response consists of a two-page Brief in Opposition to Enforcement of Settlement Agreement which expressly incorporates the "points, authorities and exhibits" made in their Brief in Opposition to Request to Enforce Settlement in *T-Mobile USA, Inc. v. AU Elecs., Inc., et al.*, No. 12 C 10046, Doc. 137. The Court cites the latter document as "*T-Mobile*, R. 137 at __."

**Analysis**

The issue before the Court is whether the settlement agreement that the parties signed on August 20, 2013 is enforceable. As mentioned above, defendants have filed a notice of repudiation in which they completely disavow the validity of the agreement. R. 132. Defendants maintain that the Court should decline to enforce the agreement because: (1) Sprint fraudulently induced them to enter into the agreement; (2) Sprint breached the express terms of the agreement; and (3) equitable considerations prevent the agreement from being enforced. *T-Mobile*, R. 137. The Court addresses these arguments in turn.

## I. The Parties Entered into a Valid and Enforceable Settlement Agreement.

The Court's first task is to determine whether the parties entered into a valid and enforceable settlement agreement. *See Wilson*, 46 F.3d at 666. Under Illinois law, an agreement is binding and enforceable when there has been "an offer, an acceptance, and a meeting of the minds as to all material terms." *Seko Worldwide, LLC v. Four Soft Ltd.*, 503 F. Supp. 2d 1059, 1060 (N.D. Ill. 2007); *see also Pritchett Asbestos Claims Mgmt. Corp.*, 332 Ill. App. 3d 890, 896 (5th Dist. 2002). Whether there was a "meeting of the minds" is determined by the parties' objective manifestations of intent, not their secret hopes or wishes. *Abbott Labs. v. Alpha Therapeutic Corp.*, 164 F.3d 385, 387 (7th Cir. 1999). The agreement must also be sufficiently definite with respect to its material terms. *Seko Worldwide, LLC*, 503 F. Supp. 2d at 1061. "A contract is sufficiently definite with respect to its material terms and certain to be enforceable if the court is enabled from the terms and

9

provisions thereof to ascertain what the parties have agreed to do." *Pritchett*, 332 Ill. App. 3d at 896.

The parties here signed the settlement agreement and exchanged notarized signature pages, which indicates that they accepted the terms of the agreement. *See, e.g.*, *Hubble v. O'Connor*, 291 Ill. App. 3d 974, 985 (1st Dist. 1997) ("[W]here [defendant] signed the agreement in his own name and tendered it to [plaintiffs], there is no reason in law or logic why he should not be individually bound by its terms."). Furthermore, the agreement itself contains numerous provisions which cautioned the parties that they were entering into a binding agreement to settle the case. For example, the parties expressly signified their understanding that "the agreement is a legally enforceable contract that affects [their] rights, duties, and obligations." R. 134 at 12. The agreement also encouraged the parties to retain and consult with counsel before consenting to its terms—indeed, counsel for both Sprint and defendants were present at the settlement negotiations, and the parties "frequently left the room to engage in private discussions with their counsel." R. 141 at 4. Moreover, defendants' counsel himself "printed several drafts of a proposed agreement, which were marked up and modified as [the attorneys] negotiated each and every provision." *Id.*

The parties also reached a "meeting of the minds" as to all material terms of the settlement agreement. A material term is an essential provision of a contract that "is of such nature and importance that the contract would not have been made without it." *Haisma v. Edgar*, 218 Ill. App. 3d 78, 86 (1st Dist. 1991). In the opening

recitals of the agreement, the parties express their "desire to resolve all claims among and between them in any way arising out of Defendants' participation in the Bulk Handset Trafficking Scheme as alleged." R. 134 at 3. Accordingly, the agreement provides for a complete resolution of this lawsuit by entry of Final Judgment against defendants in the amount of $[redacted]. *Id.* at 5. The agreement prohibits Sprint from executing on the Final Judgment, however, if defendants pay four installments of $[redacted], each separated by a period of several months. *Id.* at 6. This amounts to a total of $[redacted], or [redacted]% of the Final Judgment. In return, defendants are required to cease all conduct related to the Bulk Handset Trafficking Scheme. *Id.* at 3. These are the material terms of the agreement, without which settlement would not have been reached. Because the parties agreed on these terms, the Court finds that the parties entered into a valid and enforceable settlement agreement and that they are bound by its terms.

Without much elaboration, defendants argue that the settlement agreement is not valid due to a "substantial failure of consideration." *T-Mobile*, R. 137 at 18. Consideration is a common law contract principle defined as "a bargained-for exchange whereby the promisor receives some benefit or the promisee suffers some detriment." *LKQ Corp. v. Thrasher*, 785 F. Supp. 2d 737, 742 (N.D. Ill. 2011). Under common law, "consideration is relatively easy to show": as long as a person receives something of value in exchange for his own promise or detriment, consideration is adequate. *Wagner v. NutraSweet Co.*, 95 F.3d 527, 532 (7th Cir. 1996).

Here, defendants cannot seriously contend that consideration does not exist because a plain reading of the settlement agreement reveals a distinct "bargained for exchange," i.e., the release of the claims set forth in the lawsuit in exchange for monetary payment. *See Majkowski v. Am. Int'l Group, Inc.*, No. 08 C 4842, 2008 WL 5272193, at *3 (N.D. Ill. Dec. 16, 2008) (explaining that a $125,000 payment from defendant in exchange for a discharge of plaintiff's claims constituted adequate consideration). Moreover, the language of the agreement itself provides that adequate consideration was obtained: "for and in consideration of the mutual promises and covenants herein contained, the receipt and sufficiency of which is acknowledged by [the parties, the parties] agree as follows." R. 134 at 3. In the simplest of terms, defendants faced a serious lawsuit where [redacted] in damages were potentially at issue. They effectively settled the lawsuit for $[redacted]. This is sufficient consideration.[4]

Because the parties engaged in a "meeting of the minds" as to all material terms, the Court finds that the parties entered into a valid and enforceable settlement agreement. Consequently, the parties are bound by its terms and provisions.

---

[4] The Court notes that that neither the 60-day delay for filing the stipulation for entry of Final Judgment and Permanent Injunction, nor the provision calling for defendants to make installment payments, renders the settlement agreement conditional or unenforceable. "An agreement to settle . . . is effective when arrived at unless the parties have subjected its effectiveness to contingencies," *Lampe v. O'Toole*, 292 Ill. App. 3d 144, 148 (2d Dist. 1997), and here, there is nothing that would have prevented Sprint from filing the stipulation after 60 days. Further, it is well-established that a requirement of future payment does not render a settlement agreement invalid. *See, e.g., Pinnacle Performance Inc. v. Garbis*, No. 12 C 1136, 2013 WL 655202, at *4-*5 (N.D. Ill. Feb. 21, 2013).

## II.  Defendants Were Not Fraudulently Induced to Enter into the Settlement Agreement.

Defendants argue that they are entitled to rescind the settlement agreement because Sprint fraudulently induced them to enter into the agreement. *T-Mobile*, R. 137 at 11-15. Defendants claim that, during settlement negotiations, counsel for Sprint (1) denied knowledge about any pending law enforcement investigations of defendants; and (2) denied knowledge of any communications between Sprint and law enforcement regarding defendants. *Id.* at 3-4. According to defendants, they reasonably relied on these representations in entering into the settlement agreement. *Id.* They also contend, based on the discovery that the Court permitted, that Sprint knowingly misled them by making these statements. *Id.* at 14.

Under Illinois law, a party who is fraudulently induced to enter into a contract is entitled to rescind that contract. *See 23-25 Bldg. P'ship v. Testa Produce, Inc.*, 381 Ill. App. 3d 751, 758 (1st Dist. 2008). A claim for fraudulent inducement requires proof of five elements: "(1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance." *Hoseman v. Weinschneider*, 322 F.3d 468, 476 (7th Cir. 2003). In addition, the party alleging fraudulent inducement must establish that his belief in, and reliance on, the statement was reasonable. *Regensburger v. China Adoption Consultants, Ltd.*, 138 F.3d 1201, 1207 (7th Cir. 1998).

Defendants' fraudulent inducement claim fails for several reasons. First, defendants are unable to establish that Sprint's counsel made the statements that they allege. By way of affidavit, Vadria states that Jim Baldinger, counsel for Sprint, represented during settlement negotiations that he was not "aware of any pending criminal investigations of any of the defendants" and that he had not "communicated with law enforcement authorities or agencies about any of the defendants." *T-Mobile*, R. 137, Exh. A. However, Sprint claims that defendants have misrepresented the conversations that took place. R. 153 at 3. In his own affidavit, Baldinger states that, in response to a question from defendants, he stated that he "had not communicated with law enforcement about the Defendants." *Id.*, Exh. A, ¶ 6. Baldinger further states, however, that he "made no representations regarding Sprint's communications with law enforcement or the existence of any ongoing law enforcement investigation of Defendants." *Id.* With both sides engaging in "he said-he said," it is likely that the exactly representations made during settlement discussions will never be known. This is not sufficient under Illinois law. *See Nat'l Republic Bank of Chicago v. Nat'l Homes Constr. Corp.*, 63 Ill. App. 3d 920, 924 (1st Dist. 1978) ("The proof of each element [of fraudulent inducement] should be clear and convincing.").

Second, even if Baldinger did make the alleged statements, defendants have not shown that they were false. There is nothing in the record that suggests that anyone at Sprint knew of an active investigation against defendants when they discussed settlement terms. In their brief in opposition to enforcement, defendants

attach emails between T-Mobile and law enforcement which suggest that there *was* a pending investigation during the negotiations. *T-Mobile*, R. 137, Exh. B. However, defendants point to nothing which shows that Sprint, a different company, knew of these emails or independently communicated with law enforcement.

Third, defendants have not demonstrated that they acted in reasonable reliance upon the statements allegedly made by Sprint's counsel. Section 18 of the agreement contains an integration clause which states that the written agreement "expresses the entire agreement between the [p]arties with respect to the compromise of the claims described herein." R. 134 at 11. It, therefore, would not have been reasonable for defendants to rely upon the statements that T-Mobile's counsel allegedly made, and defendants have not provided clear and convincing evidence to the contrary.

Fourth, defendants have not alleged any damage resulting from their reliance on the alleged statements made by Sprint's counsel. The settlement agreement states that defendants are required to pay $[redacted], in four equal installments of $[redacted] each, beginning on January 31, 2014. R. 134 at 6. Defendants assert that they have been damaged because the government has frozen AU's funds and placed a $10 million lien on its bank accounts, and therefore they will default on the agreement and become immediately liable for the $[redacted] Final Judgment. *T-Mobile*, R. 137 at 19. In support of this argument, defendants submit a declaration from Vadria stating that "it is impossible for AU to cause any payments to be made out of [its] bank account." *Id.* Exh. A at ¶ 12.

Defendants' argument is untenable. Here, the only bank accounts that have been frozen are AU's corporate accounts. The bank accounts of the individual defendants, Yasin and Vadria, have not been frozen, and defendants have made no showing that they will be unable to satisfy the monetary commitments of the agreement by using their personal assets. In addition, they agreed that they would make the payments at the time the agreement was signed. They agreed to an extended payment plan and bore the risk that at some point in the future they may be unable to make the payments. As with any agreement, the failure of a party to fulfill its side of the bargain does not give it the ability to walk away from the agreement. The party simply has to live with the consequences of the breach. Therefore, defendants have not established any tangible harm, and their argument that they cannot make payments is without adequate support. The only other plausible consequence to defendants is their inability to misrepresent the state of the case to the Court and their insurers, which is something they should not do in the first place. Accordingly, their argument regarding damage fails.

Finally, and perhaps most significantly, defendants are not entitled to rescission for fraudulent inducement because they misrepresented the state of this case to the Court and their insurers. Rescission is an equitable remedy, and its application is largely left to the discretion of the trial judge. *See Nigrelli v. Catholic Bishop of Chicago*, 68 F.3d 477, 477 (7th Cir. 1995). The doctrine of "unclean hands" prohibits rescission, however, when the party seeking to rescind the agreement has engaged in misbehavior related to the transaction at issue himself. *See Zahl v.*

*Krupa*, 365 Ill. App. 3d 653, 658 (2d Dist. 2006). The rationale of this doctrine is to prevent "one seeking equity from taking advantage of his own wrong." *La Salle Nat'l Bank v. 53rd-Ellis Currency Exch., Inc.*, 249 Ill. App. 3d 415, 437 (1st Dist. 1993). "In looking at whether unclean hands are present, the court will look to the intent of the party, not the effect of its actions, and will only find unclean hands if there has been fraud or bad faith." *Jaffe Commercial Fin. Co. v. Harris*, 119 Ill. App. 3d 136, 140 (1st Dist. 1983); *see also Thompson Learning, Inc. v. Olympia Props., LLC*, 365 Ill. App. 3d 621, 634 (2d Dist. 2006).

In this case, defendants filed a motion to advance a hearing or decision on the pending motions to dismiss. R. 129. In their motion, defendants demanded a decision on the pending motions to dismiss and faulted the Court for providing "no explanation for why [it] has chosen to delay in ruling upon the . . . motions." *Id.* ¶¶ 6, 15. Inexplicably, defendants made no mention of the fact that the parties had already signed a settlement agreement which had completely resolved the lawsuit. In effect, defendants asked the Court to expend judicial resources on a case that had already settled in all material respects.

Furthermore, after the settlement agreement had been reached, defendants filed a lawsuit in this Court against one of its insurers. Defendants failed to state in that complaint that they had reached settlement and, to the contrary, misleadingly contended that they needed an insurance coverage determination to assist in the "continued legal defense" of their claims. *See AU Elecs., Inc., et al. v. Harleysville Grp., Inc., et al.*, No. 13 C 5947, R. 1 ¶ 14. These misrepresentations bring

defendants to the table with "unclean hands," and as a result, they are barred from repudiating the settlement agreement due to fraudulent inducement.

Defendants fault the Court for setting an "accelerated briefing schedule" and "openly admitting that it was limiting [their] rights to discovery because it was employing a summary procedure to determine whether or not to enforce the instant [s]ettlement [a]greement." *T-Mobile*, R. 137 at 11. According to defendants, a decision to enforce the agreement "absent affording [d]efendants their rights to full discovery and a full evidentiary hearing would prejudice their legally protected rights and amount to an abuse of discretion." *Id.* at 12. In support of their argument, defendants cite an opinion issued by the D.C. Circuit in the late 1960s which stands for the proposition that a summary procedure is ill-suited to situations presenting complex factual issues. *Id.* (citing *Autera v. Robinson*, 419 F.2d 1197, 1200 (D.C. Cir. 1969)). *Autera*, however, involved an oral settlement agreement in which there were numerous complex issues of fact. Its holding is not applicable to this case.

Here, the Court has afforded defendants adequate discovery to explore its claims. The parties were given ample opportunity to brief their arguments, and the Court heard oral argument on many of the issues during several motion hearings. R. 144; R. 147. These procedures are by no means summary in nature, and the Court does not find it necessary to order an evidentiary hearing at this stage in the proceeding. Evidentiary hearings are only necessary to resolve disputed issues of material fact, none of which are presented here. *See EEOC v. Bay Shipbuilding*

*Corp.*, 668 F.2d 304, 309-10 (7th Cir. 1981); Fed. R. Civ. P. 78 ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings."). Furthermore, as explained below, any additional evidence that defendants expect to obtain would ultimately be unhelpful, as defendants are not entitled to rescind the contract for a number of other reasons.

Defendants have not satisfied their burden of providing clear and convincing evidence to support each of the elements of fraudulent inducement. Therefore, they cannot rescind the settlement agreement on that ground.

## III.   Sprint Did Not Breach the Express Terms of the Settlement Agreement.

Defendants next maintain that they are entitled to rescind the settlement agreement because Sprint breached the express terms of the agreement by: (1) disclosing information about defendants to law enforcement; and (2) filing its notice of settlement which disclosed forbearance terms. *T-Mobile*, R. 137 at 15-18. Under a plain reading of the terms of the agreement, these arguments fail.

### A.   Sprint's Disclosures to Law Enforcement

Section 17 of the settlement agreement provides that "Sprint may use any information provided by the Defendants to investigate and pursue claims against others." R. 134 at 10. The agreement further states that "Sprint shall not disclose Defendants' information beyond what is reasonably necessary to investigate and pursue claims of participation in the Bulk Handset Trafficking Scheme or upon request by a member of law enforcement." *Id.* These are the only limitations placed on Sprint with respect to defendants' "information."

Defendants fail to identify any information that Sprint shared with law enforcement in violation of Section 17 the settlement agreement. To be sure, defendants attach emails to their brief which show that T-Mobile disclosed defendants' information to law enforcement after the agreement had become effective. *T-Mobile*, R. 137, Exh. B. However, Sprint is a separate company, and defendants have not demonstrated that Sprint provided information to law enforcement outside of responding to a law enforcement request, which the agreement expressly permits. Thus, Sprint did not breach this term of the agreement.

In any event, even if Sprint had breached Section 17 of the settlement agreement, such a breach would not entitle defendants to rescission of the agreement because it would not constitute a material breach. Illinois courts have stated that rescission is only appropriate where a "fundamental or material" breach "defeat[s] the purpose of the settlement agreement or . . . render[s] it unattainable." *Solar v. Weinberg*, 274 Ill. App. 3d 726, 734 (1st Dist. 1995). The Court listed the material terms of the agreement in Section I above, which include, among other things, payment by defendants in exchange for a complete resolution of the lawsuit. The provision of the agreement regarding disclosure of defendants' information was not a material term; in other words, it was not of such importance that the settlement agreement would not have been reached without it. *See Haisma*, 218 Ill. App. 3d at 86 ("In order to determine whether a failure of performance constitutes a material breach permitting rescission of the contract, a court must ask whether the

matter, in respect to which the failure of performance occurs, is of such a nature and of such importance that the contract would not have been made without it."). As a result, any breach of Section 17 would not entitle defendants to rescission.

**B.    Sprint's Notice of Settlement**

Section 9(C) of the settlement agreement contains a provision that prohibits defendants from ever disclosing Sprint's forbearance in executing on the Final Judgment:

> Any forbearance by Sprint in executing on the Final Judgment shall remain STRICTLY CONFIDENTIAL and Defendants are strictly prohibited from disclosing forbearance or filing with the Court any document reflecting such forbearance under all circumstances except in defense of an action to enforce the terms of this Agreement. In that event, Defendant(s) may file a copy of this Agreement with the Court under seal, pursuant to the applicable Rules of Civil Procedure and the Local Rules of Court.

R. 134 at 6. Defendants maintain that Sprint breached the express terms of the agreement by filing its notice of settlement on September 16, 2013. The Court disagrees.

The language of Section 9(C) prohibits Sprint from disclosing its *forbearance in executing* on the Final Judgment, i.e., not pursuing collection of the $[redacted] Final Judgment and instead accepting $[redacted]. Under Illinois law, "the paramount objective [in interpreting a settlement agreement] is to give effect to the intent of the parties as expressed by the terms of the agreement." *Laserage Tech. Corp.*, 972 F.2d at 799. Here, there is nothing in the agreement which prohibits Sprint from informing the Court of the *fact* of settlement. And that is exactly what

Sprint did. Sprint's notice of settlement informed the Court that "all parties to this case have reached a comprehensive settlement, which provides, among other things, for the case to be resolved by entry of a Final Judgment and Permanent Injunction." R. 115 at 1. The notice further refers to the 60-day delay in filing the stipulation for entry of the Final Judgment and Permanent Injunction. *Id.* What the notice does *not* do, however, is inform the Court that Sprint would forego executing on the Final Judgment in exchange for four payments of $[redacted] each. Such a disclosure would be expressly prohibited by Section 9(C). Accordingly, because Sprint merely informed the Court of the fact that a settlement had been reached, it did not breach Section 9(C) of the agreement.[5]

## IV. Equitable Considerations Do Not Prevent Enforcement of the Settlement Agreement.

Finally, defendants argue that the doctrine of commercial frustration precludes enforcement of the settlement agreement. *T-Mobile*, R. 137 at 18-20. According to defendants, the primary object of the settlement agreement was the forbearance agreement by which Sprint agreed that it would not collect the $[redacted] Final Judgment in exchange for $[redacted]. *Id.* at 19. However, because of the government's execution of the search warrant and pending criminal investigation, defendants maintain that they do not have any money to pay the $[redacted] forbearance and, thus, are facing the prospect of defaulting on the

---

[5] For the reasons explained in Section III-A of this opinion, the Court finds that even if Sprint had breached this provision of the settlement agreement, such a breach would not entitle defendants to rescind the agreement.

settlement agreement. *Id.* As a result, defendants contend that the agreement is defeated by commercial frustration of purpose. *Id.* at 18-20.

"The commercial frustration defense is not to be applied liberally and is only appropriate if a rigorous two-part test is satisfied." *Blue Cross Blue Shield of Tenn.*, 517 F. Supp. 2d at 1059. To satisfy that difficult test, a party must demonstrate that: "(1) the frustrating event was not reasonably foreseeable; and (2) the value of counterperformance has been totally or nearly totally lost or destroyed by the frustrating event." *Id.* Defendants cannot meet this demanding test.

First, the governmental raid on AU's corporate offices was not unanticipated or unforeseeable. Defendants have conceded that it is public knowledge that companies engaged in the trafficking of phones have been raided by the federal government. R. 129 at 2 n.1. In fact, defendants had this concern in mind when they asked counsel for Sprint during settlement negotiations if he was aware of any pending investigations against them. *T-Mobile*, R. 137 at 3. Regardless of how Sprint's counsel answered the question, defendants knew or should have known that Sprint did not have the ability to control or bind law enforcement with respect to a potential raid. Defendants cannot turn a blind eye to a known risk. *See AMPAT/Midwest, Inc. v. Ill. Tool Works Inc.*, 896 F.2d 1035, 1042 (7th Cir. 1990).

Second, as described above, the only bank accounts that have been frozen by the government are AU's corporate accounts. The bank accounts of the individual defendants, Yasin and Vadria, have not been frozen, and defendants have made no showing that they will be unable to satisfy the monetary commitments of the

agreement by using their personal assets. Accordingly, the value of their counterperformance has not been destroyed, and the doctrine of commercial frustration does not bar enforcement of the settlement agreement.

## V. Sprint is Not Entitled to Recover Fees and Costs Associated with Defendants' Attempt to Repudiate the Settlement Agreement.

As a final matter, Sprint asserts that defendants and their counsel "should be ordered to reimburse Sprint for the fees and costs associated with having to address Defendants' improper attempt to repudiate the Agreement." R. 141 at 15. "In order to impose sanctions pursuant to its inherent power, a court must find that the party acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 386 (7th Cir. 2008). Further, a court has discretion to impose sanctions under 28 U.S.C. § 1927 "when an attorney has acted in an objectively unreasonable manner by engaging in a serious and studied disregard for the orderly process of justice; pursued a claim that is without a plausible legal or factual basis and lacking in justification; or pursue[d] a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound." *Jolly Grp., Ltd. v. Medline Indus., Inc.*, 435 F.3d 717, 720 (7th Cir. 2006) (internal quotations and citations omitted).

The Court declines to impose sanctions on defendants and their counsel for attempting to repudiate the settlement agreement. It is a close question. The Court was not pleased to learn for the first time on September 16, 2013 that the case had settled and a settlement agreement had been signed several weeks earlier. Significant pending motions to dismiss on this case were being reviewed during this

period, and time was spent on this case that could have been expended on other pending cases. Defendants' "request" that the Court expedite its ruling on the motions to dismiss, without informing the Court that a settlement agreement was signed several weeks earlier, can charitably be described as disingenuous. In the end, however, the Court does not agree with Sprint's argument that defendants had absolutely no legal or factual basis to invalidate the agreement, and therefore the Court declines to award fees and costs to Sprint.

## Conclusion

For the reasons explained above, the Court grants the relief requested in Sprint's motion to enforce the settlement agreement and finds that defendants' notice of repudiation is without force or effect. R. 141. In light of the Court's enforcement of the settlement agreement, defendants' motions to dismiss and Sprint's motion for preliminary injunction are denied as moot. R. 17; R. 23; R. 60. Defendants' motion advance a hearing or decision on the pending motions to dismiss is also denied as moot. R. 129. Simultaneously with the entry of this opinion, the Court will enter a signed stipulated order of dismissal. This case is therefore dismissed with prejudice.

The Court would add that Sprint's motion to enforce the settlement agreement has been fully briefed since October 18, 2013, and through no fault of the parties, the motion has been pending since then. If defendants are unable to make their first payment on January 31, 2014 as required by the settlement agreement,

the Court encourages, but of course does not require, the parties to enter into a codicil which extends the due date of this first payment for a short period of time.[6]

ENTERED:

Thomas M. Durkin
United States District Judge

Dated: January 23, 2014

---

[6] The Court notes that the January 31, 2014 date has been known to defendants since August 20, 2013.